(No. 4476—

NAT HERSHENSON, Claimant, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed November 12, 1952.*

DAVID CHAIMOVITZ, Attorney for Claimant.

IVAN A. ELLIOTT, Attorney General; WILLIAM H. SUMPTER, Assistant Attorney General, for Respondent.

LANSDEN, J.

Claimant, Nat Hershenson, filed his complaint herein in which he seeks damages for the alleged negligence of respondent, acting through certain employees of the Division of Highways.

The transcript of the testimony in this case is 203 pages in length. Same was filed in this Court on May 15, 1952. When the time for claimant to file an abstract of the testimony and his brief had expired, the case was assigned for opinion. A few days later claimant filed a motion requesting that the case be removed from the advisement docket, and that claimant be granted leave to file his abstract, brief and argument on or before

September 10, 1952. For good cause shown, said motion was granted.

However, no abstract or brief for claimant or respondent has been filed to date, and the case, therefore, proceeds to a decision on the record as it now stands.

Fortunately for the Court, an analysis of the transcript of the testimony discloses that the case turns on factual, rather than legal questions.

At the outset, it should be observed that the length of the transcript resulted in large measure from the repetitive questioning of most of the witnesses as to certain distances involved in the occurrence. Not only did counsel want to know how many feet there were, but also how many yards, rods, paces, and even inches. In this search for the ultimate in accuracy (or inaccuracy), one of the most important vehicles in the case was almost lost sight of, and another highly important vehicle just disappeared.

On October 19, 1950, at about 3:30 P.M., claimant was proceeding in a westerly direction in his Studebaker car along State Highway No. 17 at a point less than one mile west of its intersection with State Highway No. 170 in Livingston County, and approximately twelve miles east of Streator. Route No. 17 at this point is straight and level for over two miles. The weather was clear and bright, and the pavement dry.

Claimant testified he was following a large truck at a distance of about 150-200 feet, and at a speed of approximately 45 miles per hour. Suddenly the truck pulled to the left into the east bound lane, and claimant then saw ahead of him a parked highway truck, and a highway maintenance crew engaged in putting tar in cracks in the pavement. Then the truck pulled to the right into its proper lane, and claimant was confronted

by a car heading at him in the eastbound lane. To avoid an impending head-on collision, claimant testified that he applied his brakes, swung further to the left, went off the highway, careened through a fence, then hit a tree, and finally stopped at some distance south of the highway. Considerable damage was done to claimant's car, but he suffered only slight injuries.

The three members of the highway maintenance crew, a farmer, who was only a few hundred feet from the scene, and a tractor mechanic, who was repairing the farmer's tractor, all testified for respondent.

The latter two heard the screeching of the skidding tires of claimant's car, but the farmer's house obscured their view of the car as it left the highway, and ultimately crashed into the tree.

Not one witness for respondent recalled seeing, hearing or noticing a truck proceeding ahead of claimant's car, and none even mentioned the car supposedly proceeding eastwardly toward the threatened head-on collision. If there was such a car, it certainly did not stop, although had it been there the driver would have had a front-row seat to view the gyrations of claimant's vehicle, and almost certainly would have stopped to render assistance. This curious hiatus in the record leads us to the conclusion that there was insufficient proof of the very presence of such vehicle.

As for the truck claimant was supposed to have been following at a distance of 150-200 feet, a witness for respondent testified he moved the highway truck westwardly in the proper lane a short distance, and looked into the rear view mirror as he stopped, and he saw, at least four hundred feet behind him, claimant's oncoming car. If claimant was following the truck as closely as he testified, then the truck would have been

visible in the rear view mirror, and probably claimant's car would have been obscured.

The physical facts in the case show, without dispute, that claimant's car left the highway several hundred feet east of the maintenance crew, and that it came to rest at a point south of, but still east of the location of the maintenance crew.

It is almost proven beyond peradventure of doubt that the maintenance crew had put up three thirty-inch signs bearing the legends: "Men Working", "Road Repairs", and "One-way Traffic" along the highway shoulder. The first sign was 30 feet west of the junction of Highways Nos. 17 and 170. The second sign was 200 feet west of the first, and the third 200 feet further west. Although the third of these signs was about 3,500 feet east of the highway crew at the time of the accident, because the crew kept moving slowly away from them, the fact remains that claimant could and should have seen them, and acted accordingly.

It was also testified that claimant stated immediately after the accident that he was going 65 miles per hour, and that the sun blinded him.

Claimant also testified that no member of the maintenance crew came over to assist him after the crash. However, every witness for respondent testified to the contrary.

This Court has not been reluctant to grant awards in tort cases, but we are bound by the rule that a claimant must prove his case by a preponderance of the evidence. This claimant has failed to do herein. From the record we conclude that respondent was not negligent, and that claimant has failed to prove his freedom from contributory negligence.

An award to claimant, Nat Hershenson, is, therefore, denied.